UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FERNANDO RAMOS MARTINEZ,
Petitioner,
v.
MARKWAYNE MULLIN, et al.,
Respondents.

Case No. 5:26-cv-06588-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 222-570-925**

Fernando Ramos Martinez ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. The Court has considered the Petition, the attached exhibits, Respondents' answer, the declaration of Deportation Officer Henry Cervantes, and Petitioner's reply. For the reasons stated below, the Petition is granted in part.

## I. Background

Petitioner was born in Mexico and entered the United States without inspection more than twenty years ago. Thereafter, he was not apprehended by immigration authorities or placed in removal proceedings.

On October 29, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") officers while driving to work. Plaintiff alleges

the ICE officers followed his vehicle, stopped him, and questioned him, including about his name. The officers did not know Petitioner's identity before he was stopped. According to Petitioner, he was not served a warrant and no officer made or recorded any pre-arrest determination that Petitioner was likely to escape before a warrant could be obtained. Petitioner did not flee or resist. Dkt. No. 1, Petition at 10–12.[1]

After his arrest, Petitioner was taken to the Desert View Facility in Adelanto, California. Respondents did not make an initial custody determination under 8 C.F.R. § 236.1(c)(8) and did not serve Petitioner with a Form I-286 or any statement of the factual basis for his detention. No bond or custody redetermination has been held. *Id.* ¶ 26.

On November 5, 2026 at 1:00 a.m., Petitioner called his family and informed them he was being transferred but was given no further information. As of 8:54 a.m., ICE's Online Detainee Locator listed Petitioner as detained at the Desert View facility. The Petition in this action was filed later that morning. That evening, Petitioner's counsel was informed by an ICE officer that Petitioner was currently in Arizona and was in route to Tacoma, Washington. Dkt. No. 6 at 2; Dkt. No. 6-1. In response, the Court ordered Respondents to file a declaration "stating (1) when Petitioner was detained; (2) when Petitioner was transferred; and (3) where Petitioner is currently located." Dkt. No. 7.

On November 10, 2026, Respondents filed their answer, and on November 12, 2026, filed a declaration by Deportation Officer Cervantes. Dkt. Nos. 10, 11. Officer Cervantes declares that Petitioner was taken into custody on October 29, 2026, and entered the Adelanto ICE Processing Center at 6:35 p.m. On November 5, 2026 at 8:55 a.m., Petitioner was transferred

---

[1] The Court uses the page numbers inserted into the pleadings by the Court's electronic filing system.

from Adelanto and was booked into the Arizona Removal Operations Coordination Center ("AROCC") at 6:00 p.m. that day. On November 6, 2026, Petitioner was booked out of the AROCC and transferred to the Northwest ICE Processing Center in Tacoma, Washington, where he remains in custody. Dkt. No. 11, Cervantes Decl. ¶¶ 5–9.

Prior to his detention, Petitioner lived with his wife and is the father of two United States citizen adult children; his brother is a lawful permanent resident. Throughout his residency in the United States, he has worked, filed tax returns, and was his family's primary financial support. *Id.* ¶ 22. Petitioner's counsel is unaware that Petitioner has any criminal conviction history.[2] *Id.* ¶ 23.

## II. Discussion

The Petition raises four claims: (1) Petitioner's detention without a pre-deprivation hearing violated due process; (2) his warrantless arrest without a pre-arrest likelihood-of-escape determination violated 8 U.S.C. §§ 1226(a) and 1357(a)(2); (3) his detention without an initial custody determination violated 8 U.S.C. § 1226(a); and (4) that due process requires Respondents to bear the burden of proof by clear and convincing evidence at a future bond hearing.

Respondents oppose release and argue Petitioner is properly detained because this is his first detention, and that "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." Dkt. No. 10 at 2. Respondents assert Petitioner must exhaust his remedies by requesting such a bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th

---

[2] Petitioner's family reported that Petitioner was involved in a traffic-related matter approximately fourteen years ago. Petition ¶ 23.

1160 (9th Cir. 2026), and can also seek a *Rodriguez*[3] bond hearing after 180 days of total detention time. Respondents further argue that Petitioner is not entitled to release based on an allegedly unlawful initial arrest under the Fourth Amendment. Dkt. No. 10. As Petitioner notes in reply, Respondents' Fourth Amendment argument responds to a claim Petitioner did not make, as his warrantless arrest is based on 8 U.S.C. § 1357(a)(2), and the other § 1226(a) procedures that Respondents failed to follow when detaining him. Respondents filed no exhibits to their answer.

As an initial matter, Respondents do not contend that the Court lacks jurisdiction based on Petitioner's current detention in the Western District of Washington. Based on the evidence before the Court, Petitioner was detained within the Central District of California when the Petition was filed. Therefore, the subsequent transfer did not affect this Court's jurisdiction over the pending Petition. *See, e.g., Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." (citing *Ex parte Endo*, 323 U.S. 283 (1944))); *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005) (" '[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.' " (quoting *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990))).

Turning to the merits, Petitioner argues in his second and third claims that he is entitled to release because Respondents failed to serve a warrant

[3] At a *Rodriguez* bond hearing, which is required in the Central District of California, the government must show at six-month intervals that continued detention pending removal proceedings is justified by clear and convincing evidence. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

when they arrested him, did not make any pre-arrest determination that he was likely to escape before a warrant could be obtained, and failed to provide an initial custody determination after he was arrested. For the following reasons, the Court agrees and orders release.

### A. Detention Under 8 U.S.C. § 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion

either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient,

legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026)

("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-

00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

### C. Respondents' Failure to Comply with § 1226(a)

Here, Respondents have provided no argument or evidence to rebut Petitioner's allegations that he was detained without a warrant as required under 8 U.S.C. 1357(a)(2), without a determination that he was likely to escape before a warrant could be obtained, and did not receive a custody determination. In the absence of contrary evidence, the Court takes Petitioner's allegation that he was detained without the process provided in § 1226(a) to be true.

Beginning in July 2025, DHS took the position that individuals like Petitioner who entered without inspection were detained under § 1225 and were not entitled to the protections set out in § 1226(a). *See Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (describing policy). On July 30, 2026, the Ninth Circuit confirmed that those who entered without inspection are properly detained under § 1226, not § 1225, and are entitled to the protections of that statutory provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026).

Petitioner was arrested after the *Rodriguez Vazquez* decision, and there is no evidence in the record showing that the procedures under § 1226(a) were followed. Petitioner's detention is accordingly unlawful. And by denying Petitioner the protections of § 1226(a), Respondents created an unacceptably

high risk that Petitioner's detention is not justified on danger or flight risk grounds.

For these reasons, the Court finds that Petitioner was detained in violation of his due process rights.

**D. Remedy**

Respondents argue that, "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." Dkt. No. 10 at 2. As many of the courts to address this issue have concluded, the failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) is unlawfulness that "cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); J.T.G., 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases); *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment.").

Petitioner is currently confined without any determination that his detention was warranted. A bond hearing belatedly conducted at some point in the future is " 'no substitute' " for an initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Instead, because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Accordingly, the Court grants Counts Two and Three of the Petition. Because those counts afford the greatest relief, the Court declines to address the remaining claims and dismisses those without prejudice.

**IV. Order**

For the foregoing reasons, the Petition is GRANTED as to Counts Two and Three, and the remaining counts are dismissed without prejudice.

Petitioner Fernando Ramos Martinez (A# 222-570-925) is **ordered released** within 24 hours of this Order. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of his personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 16, 2026



Patricia Donahue
United States Magistrate Judge